UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JEROME CROMWELL, *on behalf of himself and all other employees similarly situated*,

                                      Plaintiff,

                -v-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION and ALAN D. AVILES,

                                   Defendants.

------------------------------------------------------------------X

12 Civ. 4251 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Jerome Cromwell ("Cromwell"), a former hospital police officer with the New York City Health and Hospitals Corporation ("HHC"), brings this action on his own behalf and on behalf of a putative class of HHC employees against the HHC; Alan D. Aviles, HHC's chief executive officer; and various individual hospitals that comprise part of HHC (collectively, "defendants"). Cromwell seeks to recover unpaid wages allegedly owed to hourly employees for unspecified meal periods and breaks during which they worked, and for work performed before and after scheduled shifts. Cromwell asserts that he and similarly situated HHC employees were deprived premium pay and overtime pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL") §§ 191 *et seq.*

        Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion to dismiss Cromwell's FLSA claims is granted. The Court accordingly declines to exercise supplemental jurisdiction as to Cromwell's NYLL claims.

I.  **Background**

    A.  **Cromwell's Factual Allegations**[1]

Between October 10, 1989, and February 1, 2010, Jerome Cromwell worked as a hospital police officer at Woodhull Medical and Mental Health Center, a medical facility of the HHC. Am. Compl. ¶ 68. As a member of the International Brotherhood of Teamsters Local 237, Cromwell was subject to the union's collective bargaining agreement. *Id.* ¶ 69.

Cromwell's official duties included patrolling and protecting the Woodhull facility and monitoring patient and visitor activities. *Id.* ¶ 70. Cromwell was required to carry a pager and immediately to respond to emergency calls received during his scheduled shifts. *Id.*

Cromwell was typically scheduled to work five days per week from 11 p.m. until 7 a.m., totaling 37.5 hours of scheduled work. *Id.* ¶ 71. Approximately twice per month, Cromwell worked an additional 7.5 hour shift. *Id.* During those weeks, Cromwell would work a total of 45 hours. *Id.* Cromwell does not appear to allege that he was not paid the appropriate overtime rate for overtime hours worked during the weeks in which he worked an extra shift.

Cromwell alleges that he performed additional work before and after his scheduled shift, resulting in an additional 60 minutes of work time for each such shift. *Id.* ¶ 73. Additionally, Cromwell alleges that twice per week he was required to work an extra 20 minutes at the end of his shift while he awaited the officer who would relieve him of his post. *Id.*

In addition, Cromwell estimates that, approximately once per week, he would work through his meal break. *Id.* ¶ 76. He also estimates that his meal breaks were disrupted by work-related interruptions for at least 15 minutes once per week. *Id.* Cromwell estimates that this

---

[1] The Court's account of the underlying facts in this case is drawn from the Amended Complaint. Dkt. 25 ("Am. Compl.").

2

time totaled an additional one hour per week of uncompensated time, which should have been paid at overtime rates. *Id.*

Thus, in total, Cromwell estimates that he worked an additional approximately 6 hours and 40 minutes per week for which he was not compensated by the defendants. *Id.* ¶ 74.

### B.     HHC Break and Compensation Policies

The Amended Complaint alleges that HHC's compensation procedures include a "Meal and Break Deduction Policy" under which HHC's timekeeping system automatically deducts time from employees' paychecks each day for meals, breaks, and other deductible periods of time. Am. Compl. ¶¶ 86–87. For each shift that is long enough for a meal break, employees are deducted at least 30 minutes from their pay. *Id.* ¶ 88. The Complaint alleges that Cromwell performed work during those automatically deducted breaks.

The Amended Complaint alleges that defendants fail to ensure that employees do not perform work during the 30 minutes that are automatically deducted from their pay. *Id.* ¶ 91. It alleges that defendants do not prohibit employees from working during their unpaid breaks and do not have rules against such work. *Id.* ¶ 93.

The Complaint also alleges that HHC has an "Unpaid Pre- and Post-Schedule Work Policy" under which employees are permitted to complete their regular shift responsibilities. The Complaint alleges that defendants do not prohibit employees from completing work before and after their scheduled shifts and do not have rules against such work. *Id.* ¶¶ 119–145.

## II.    Applicable Legal Standard

In resolving a motion to dismiss, the Court must "construe the Complaint liberally, accepting all factual allegations in the Complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012).

Nevertheless, the "[f]actual allegations must be enough to raise a right of relief above the speculative level," and the complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [plaintiff's claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Put differently, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In applying these principles, the Court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Tarshis v. Riese Org.*, 211 F.3d 30, 39 (2d Cir. 2000) (citing *Allen v. Westpoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). Here, this includes the Amended Complaint, as well as the emails attached as exhibits to the Amended Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

### III. Discussion

#### A. FLSA

Cromwell's claim under the FLSA in this case[2] is that HHC did not pay him for all of his hours worked, and that he was not properly paid for his overtime hours. *See* 29 U.S.C. §§ 206–207. The FLSA requires that an employer pay overtime at a rate of one and a half times an employee's regular rate for all hours worked in excess of 40 per week. 29 U.S.C. § 207(a)(1).

Importantly, to state a claim under the FLSA, a complaint must state more than vague legal conclusions. As the Second Circuit recently explained, "to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)). In holding that the plaintiffs in *Lundy* had failed to plead facts sufficient to support a plausible claim of a violation of the FLSA, the Second Circuit noted that they failed to allege "a single workweek" in which they worked uncompensated time in excess of 40 hours. *Id.* Rather, the plaintiffs had alleged

---

[2] At argument, defendants' counsel drew the Court's attention to the fact that Cromwell was an opt-in plaintiff in *Yarus v. N.Y.C. Health & Hospitals Corp.*, No. 10 Civ. 2662 (PAC), 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011). *See* Consent to Opt-In as a Party Plaintiff, Dkt. 7. The Court has confirmed defendants' proffer. In *Yarus*, the plaintiffs alleged that their work hours were understated and thus, HHC had violated the FLSA with regard to overtime hours. 2011 WL 321186, at *2. *Yarus* was considered along with three related cases and was dismissed in its entirety. The Court in *Yarus* held that the "generalized allegations contain[ed] no facts to support the claims under the FLSA." *Id.* at *3.

Cromwell was also initially one of two named plaintiffs in *Ali v. N.Y.C. Health & Hospitals Corp.*, No. 11 Civ. 6393 (PAC), 2013 WL 1195794 (S.D.N.Y. Mar. 25, 2013). *See* Compl., Dkt. 1. However, the Amended Complaint in that case dropped him as a named plaintiff, and was ultimately dismissed.

Although neither *Yarus* nor *Ali* is currently a live case before a court in this District, an appeal has been filed in *Yarus*. Should the dismissal in *Yarus* be overturned, Cromwell may be forced to elect between his status as an opt-in plaintiff in *Yarus* or pursuing his claims here.

5

that they "typically" worked a given number of hours or "occasionally" worked an extra shift or "approximately twice per month" worked a certain number of shifts. These allegations, the Second Circuit stated, "invited speculation [that] does not amount to a plausible claim under FLSA." *Id.* at 115.

At argument, HHC argued that Cromwell's pleadings are akin to the pleadings in *Lundy* by plaintiff Kelly Iwasiuk, which the Second Circuit held were deficient, and thus must also be dismissed. Specifically, the fourth amended complaint in *Lundy* alleged that during her tenure as a registered nurse at the Good Samaritan Home Care division, Iwasiuk "was *typically* scheduled from 8 am until 4 pm, approximately four days a week" and "worked five to six shifts a week *approximately* twice a month." *See* No. 10-cv-1326 (JS)(MLO) (E.D.N.Y. May 12, 2011), Dkt. 183 ("*Lundy* Fourth Am. Compl.") ¶ 58 (emphasis added). The complaint further alleged that Iwasiuk "worked time for which she did not receive compensation, including during her meal breaks which she typically missed or which were interrupted . . .; before her scheduled start time in order to prepare her assignments or read report [*sic*] . . .; and work after her scheduled start time writing and uploading reports." *Id.* The complaint there estimated that Iwasiuk incurred "additional uncompensated time of least 12 hours per week." *Id.* The Second Circuit held these allegations insufficient to state a claim under the FLSA. *Lundy*, 711 F.3d at 114–15.

Measured alongside the allegations in *Lundy* relating to Isawiuk, it is clear that Cromwell's factual allegations suffer from the same lack of specificity. Here, the Amended Complaint alleges that Cromwell was "typically" scheduled for five shifts per week and worked an extra shift "approximately twice a month." Am. Compl. ¶ 72. It further alleges that Cromwell "worked uncompensated time . . . before his scheduled shift and after his scheduled

shift ended as well [as] when he worked thorough his meal breaks or when his meal breaks were interrupted with work related interruptions." *Id.* ¶ 72.

The Amended Complaint does not, however, allege precisely when, or at what point during, his 21 years of employment, Cromwell worked more than 40 hours. *See DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 509 (E.D.N.Y. 2011) (requiring "time frame for when those hours were worked"). Significantly, even assuming *arguendo* that a three-year statute of limitations governs Cromwell's claims because he has alleged willful violations, *see* Am. Compl. ¶ 177; 29 U.S.C. § 255 (two-year statute of limitation for FLSA; three-year where defendant's conduct is willful); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356–57 (E.D.N.Y. 2012), the Amended Complaint does not point to any *particular* workweek within the limitations period during which Cromwell worked uncompensated time more than 40 hours.[3] The Amended Complaint thus is deficient for the same reason that the allegations as to Iwasiuk in *Lundy* failed to state a claim. The estimates and approximations here invite the same sort of speculation that the Second Circuit held "does not amount to a plausible claim under FLSA." *Lundy*, 711 F.3d at 115.

Because the Amended Complaint fails to plead facts sufficient to support a plausible claim that the FLSA was violated, Cromwell's claim for uncompensated overtime pay under the FLSA must be dismissed.

**B.     NYLL**

Having dismissed Cromwell's claims under the FLSA, the Court must determine whether to exercise supplemental jurisdiction over Cromwell's claims brought under NYLL.

---

[3] Because Cromwell ended his employment with Woodhull on February 1, 2010, and filed his initial Complaint on May 30, 2012, he would have to allege a workweek in the eight-month period between June 1, 2009, and February 1, 2010, during which he worked in excess of 40 hours.

7

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court should, in deciding whether to exercise its supplemental jurisdiction, balance the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch*, 154 F.3d at 61 (citing *Cohill*, 484 U.S. at 350 n.7).

Here, no circumstances counsel in favor of the Court exercising supplemental jurisdiction over Cromwell's state law claims under NYLL. The Court has not yet invested the resources necessary to resolve the NYLL claim, nor do convenience, fairness, and comity counsel in favor of retaining jurisdiction. The Court accordingly declines to exercise supplemental jurisdiction over these claims. These claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Cromwell's claims brought under the FLSA is granted, and the Court declines to exercise supplemental jurisdiction over

Cromwell's NYLL claims. The Clerk of Court is directed to terminate the motion pending at docket number 28.

Cromwell's Amended Complaint is dismissed without prejudice, with leave to amend his complaint to meet the pleading standards articulated in *Lundy*. In his Second Amended Complaint, Cromwell is permitted to renew his NYLL claims.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 15, 2013
      New York, New York